UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. LOPEZ,<br><br>           Petitioner,<br><br>   v.<br><br>ANTHONY HEDGPETH, Warden, California State Prison, Susanville,<br><br>           Respondent.<br>_____/ | No. C 08-01452 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**RE: Denial of Petition for Writ of Habeas Corpus** |

Petitioner Marco Antonio Lopez, a California prisoner now incarcerated at the California State Prison in Susanville, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. section 2254. The matter is now before the court for consideration of the merits of the habeas petition in which Lopez challenges the constitutional validity of his convictions. For the reasons set forth below, the petition is denied.

BACKGROUND

Petitioner Lopez was convicted and sentenced for the murder of Gordon Lee Fowler, whom he fatally stabbed in 2002 at Fowler's home in Sebastopol, California. Lopez does not challenge the sufficiency of the evidence to support any of the factual findings implied by the jury's guilty verdict. The sole issue he raises in his petition is a question of law regarding jury instructions. The facts relevant to this inquiry are reviewed herein. They are drawn from the record and the state court of appeal decision in People v. Lopez, 2006 WL 3004219, *2 (Cal. App. Oct. 23, 2006).

I.      <u>The Crimes</u>

In October 2002, Lopez was 15 years old, and Miguel Olivera, an acquaintance of Lopez's, was 29 years old. Olivera was with Lopez when they saw Gordon Lee Fowler nearby. Olivera told Lopez that he had robbed Fowler in his home on a previous occasion when Olivera was doing some work for Fowler and Fowler had made sexual advances on him. Olivera told Lopez that he could easily steal money from Fowler too. Thereafter, Lopez accepted Fowler's invitation to do some work for him at Fowler's home. Once Lopez and Fowler were in Fowler's residence, Fowler made sexual advances towards Lopez. Lopez refused Fowler's advances and told him that he wanted to go home. Fowler then groped Lopez and tore his shirt. Lopez picked up a kitchen knife from Fowler's kitchen table and again demanded to be taken home. When Fowler came at Lopez, Lopez stabbed him forty-seven times. After stabbing Fowler, Lopez took Fowler's wallet and went outside, where he met Olivera, who had arrived at Fowler's home by then. Olivera and Lopez drove away in Fowler's car and split the money that was in Fowler's wallet. Fowler died from the stab wounds that Lopez inflicted on him.

In count one of a four-count information, Lopez was charged with murder, with the special circumstances that the murder was committed in the course of a robbery and of a burglary pursuant to Penal Code sections 187 & 190.2 (a)(17). Lopez was also charged in count two with robbery of Fowler with an enhancement for inflicting great bodily injury on a victim over the age of 70, pursuant to Penal Code sections 211 & 12022.7(c). In count three Lopez was charged with burglary of Fowler's home, pursuant to Penal Code section 459. In count four Lopez was charged with the theft of Fowler's car pursuant to Vehicle Code section 10851(a), along with various enhancements not material to the issues on appeal.

Lopez's defense to the charge of felony murder was that he went to Fowler's home to work, not to rob him, and that he stabbed Fowler only because he was afraid Fowler was going to rape him. Lopez testified at his trial that Olivera had told him that he should rob Fowler. Lopez further admitted that he had the thought of robbing Fowler when he approached Fowler's car and that he decided not to rob Fowler while in Fowler's car because Fowler was bigger than him. Lopez testified that he stabbed Fowler forty-seven times and that he took his property after so doing.

2

1 Lopez testified that he took Fowler's wallet because he thought that Olivera would meet him in front
2 of Fowler's house and that Olivera would be mad and would beat him up if he didn't take the wallet.

4 On cross-examination, Lopez denied having a plan to rob Fowler. Lopez did admit,
5 however, that while he was riding in Fowler's car, he was thinking that Fowler would be easy to rob
6 since Olivera had told him so. He also admitted that his thoughts of robbing Fowler prior to arriving
7 at Fowler's house were related to his taking Fowler's wallet "because Olivera said to take some
8 money."

## II.     Procedural History

On December 21, 2004, Lopez was found guilty in a jury trial in Sonoma County Superior Court with murder with special circumstances of robbery, burglary and taking a vehicle. Cal. Pen. Code § § 187, 190.2(a)(17), 211, 459; Cal. Veh. Code § 10851. On August 18, 2005, Lopez was convicted and sentenced to a term of twenty-five years to life in prison. On October 23, 2006, the California Court of Appeal affirmed the conviction. On February 7, 2007, the Supreme Court of California denied review of Lopez's petition.

In his federal habeas petition, Lopez asserted the following claim for relief concerning his conviction: his Fifth, Sixth and Fourteenth Amendment rights to trial by jury and due process were violated by the trial court's erroneous instructions that permitted the jury to find him guilty of felony murder even though Lopez contends that he killed the victim in an explosive rage and that the killing was therefore not part of a "continuous transaction" with the underlying robbery/burglary. On this basis, Lopez requests reversal of his conviction.

The court issued an order to show cause why the petition should not be granted. The parties have now briefed the claims and the petition is ready for a decision on the merits. This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254; 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Sonoma County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

LEGAL STANDARD

The court is required to analyze state habeas corpus claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of reducing delays in the execution of state and federal criminal sentences." Schriro v. Landrigan, 550 U.S. 465, 475 (2007), quoting Woodford v. Garceau, 538 U.S. 202, 206 (2003).

Under AEDPA, the court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro, 550 U.S. at 473.

Here, the Court of Appeal issued the last reasoned state court opinion. Thus, this court will review the opinion of the Court of Appeal under the AEDPA standards. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

DISCUSSION

I.   Exhaustion of State Judicial Remedies

As a threshold matter, the government contends that Lopez has not exhausted state judicial remedies because he did not argue in the state courts, as he does in his petition, that the failure to specifically give California Criminal Jury Instructions (CALCRIM) No. 549 amounted to a due process violation.

1   Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings
2   either the fact or length of their confinement are required first to exhaust state judicial remedies,
3   either on direct appeal or through collateral proceedings, by presenting the highest state court
4   available with a fair opportunity to rule on the merits of each and every claim they seek to raise in
5   federal court.  28 U.S.C. § 2254(b), (c).

6   Here, Lopez contends his claim in the state courts as well as in his petition was and is that the
7   trial court erred in failing to provide any instruction whatsoever, rather than specifically CALCRIM
8   No. 549, regrading the "continuous transaction" element of felony murder.  Having reviewed his
9   petition, the court agrees with Lopez on this point; Lopez's petition makes clear that he does not
10  argue for specific jury instructions, such as CALCRIM No. 549, but rather for any instructions that
11  present the element of continuous transaction.  Accordingly, state judicial remedies have been
12  appropriately exhausted for the claims presented in the petition, so the court considers Lopez's
13  petition on the merits.

14  II.     Did the Trial Court Provide Erroneous Jury Instructions?

15  To obtain federal habeas relief for errors in the jury charge, Lopez must show that "the ailing
16  instruction by itself so infected the entire trial that the resulting conviction violates due process."
17  Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction may not be judged in artificial isolation,
18  but must be considered in the context of the instructions as a whole and the trial record.  Id.; United
19  States v. Frady, 456 U.S. 152, 169 (1982) (stating the court must evaluate jury instructions in the
20  context of the overall charge to the jury as a component of the entire trial process).

21       A.      Is the Continuous Transaction Doctrine an Element of Felony Murder?

22  Lopez contends that his Fifth, Sixth and Fourteenth Amendment rights to trial by jury and
23  due process were violated because the trial court's instruction erroneously allowed the jury to find
24  him guilty of felony murder even though the jury was not clearly instructed to determine whether or
25  not the killing was a part of a "continuous transaction" with the underlying felonies of burglary and
26  robbery.  Lopez argues that the continuous transaction doctrine is an element of the crime of felony
27  murder.  He further argues that the California Court of Appeal unreasonably applied California
28

5

Supreme Court precedent when the Court of Appeal concluded that the continuous transaction doctrine is not an element of felony murder.

Under the Fourteenth Amendment, due process requires that "every fact necessary to constitute the crime with which [the defendant] is charged" be proved beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). If a trial court fails to properly instruct the jury regarding an element of the charged crime, the court commits a constitutional error that deprives the defendant of due process. See, e.g., Conde v. Henry, 198 F.3d 734, 740 (9th Cir. 1999).

In this case, the California Court of Appeal stated:

> the continuous transaction formulation is not intended as a way to limit the scope of the felony-murder rule, but rather as a way of broadening its application to include situations in which the active phase of the underlying felony has ceased by the time the homicide occurs. . . . In effect, appellant [Lopez] seeks to transmute the continuous transaction doctrine from a convenient formulation of the appellate test for the sufficiency of the evidence of felony murder in arguably borderline situations. . . . to an element of the crime. . . . This assertion elevates form over substance. The only actual requirement of the statute is that the homicide be committed "in the perpetration of" the underlying felony (§ 189). If the underlying felony and the homicide are parts of one continuous transaction, this is a sufficient condition to satisfy the statutory requirement, but that does not mean it is a necessary one."

Lopez, 2006 WL 3004219, at *16-17.

On this point, the Court of Appeal correctly interpreted the ruling of the California Supreme Court in People v. Sakarias, 22 Cal.4th 596 (2000). Sakarias states:

> We have repeatedly, both before and after People v. Mason, invoked the "one continuous transaction" analysis as a standard for sufficiency of evidence to support a felony-murder instruction or conviction.

Sakarias, 22 Cal.4th, at 624.

The California Supreme Court held in Sakarias that the trial court erroneously removed an element of felony murder from the jury's determination when it instructed the jury that "if the jury finds that the defendant committed burglary by entering the house with the intent to steal, the homicide and the burglary are parts of one continuous transaction." Id. at 623. The trial court in Sakarias wrongly failed to let the jury determine whether the act resulting in death and the underlying felony were part of one continuous transaction. In so doing, the trial court assumed an element of felony murder, namely, whether the act causing death was committed "in perpetration of"

6

the underlying felony. The trial court erred by depriving the jury of the opportunity to determine this element. Id. at 624-25.

By contrast, in Lopez's case, the trial judge simply chose to omit the term "continuous transaction" from the jury instructions. This omission did not, in and of itself, mean that the element of "in perpetration of" was removed from the jury's consideration. The continuous transaction doctrine is a standard of sufficiency of evidence to support a felony-murder instruction or conviction; it is not, in and of itself, an element of felony murder. Thus, the California Court of Appeal did not unreasonably apply California Supreme Court precedent.

Lopez cites CALCRIM No. 549 in support of his contention that the continuous transaction doctrine is an element of felony murder. CALCRIM No. 549, however, was adopted in January 2006, after the time of the trial, which was in December 2004. Therefore, CALCRIM No. 549 cannot be used to assess the propriety of the jury instruction as to the application of the continuous transaction doctrine at the time of Lopez's trial.

B.   Did the Jury Instructions Omit Elements of Felony Murder?

The California Supreme Court has held:

> [T]he felony-murder rule requires both a causal relationship and a temporal relationship between the underlying felony and the act resulting in death. The causal relationship is established by proof of a logical nexus, beyond mere coincidence of time and place, between the homicidal act and the underlying felony the nonkiller committed or attempted to commit. The temporal relationship is established by proof the felony and the homicidal act were part of one continuous transaction. . . . The continuous transaction doctrine obviates the need for a technical inquiry as to whether the felony has been completed or abandoned before the homicide was committed. . . . While the escape rule defines the duration of the underlying felony, the continuous transaction rule defines the duration of felony-murder liability, which may extend beyond the termination of the felony where the felony and the act resulting in death constitute one continuous transaction.

In People v. Cavitt, 33 Cal 4th 187, 193, 207-08 (2004)

Thus, the continuous transaction doctrine seeks to broaden the temporally permissible connection between the felony and the act resulting in death. Another legal doctrine, the logical nexus doctrine, imposes limitations on the temporal connection. In Cavitt, the court reasoned: "Here, however, there was an undisputed logical nexus between the burglary-robbery and the homicide. The crimes involved the same victim, occurred at the same time and place, and were each facilitated by [the other] . . . " Id. at 209.

7

Lopez argues that the trial court omitted an element of felony murder, namely the theory denoted by the term of art "continuous transaction." According to Lopez, the continuous transaction doctrine addresses the factual issue of "whether the killing of the victim was part and parcel of a burglary/robbery," i.e., "whether the killing in this case occurred during the course of a burglary/robbery." The felony murder doctrine that directly addresses "whether the killing of the victim was part and parcel of a burglary/robbery" is not the continuous transaction doctrine (which serves the Government's purpose by allowing for an extended temporal connection between the felony and the killing), but rather the logical nexus doctrine.

At Lopez's trial, the court instructed the jury on the logical nexus doctrine, even though that term of art was not used. The jury was instructed on murder (CALJIC 8.10), deliberate and premeditated murder (CALJIC 8.20), felony-murder (CALJIC 8.21, 8.21.1, 8.21.2), the concurrence of act and specific intent (CALJIC 3.31), and special circumstances—sufficiency of circumstantial evidence to prove required mental state (CALJIC 8.83.1). Moreover, the trial court provided additional instructions to the jury, reading in part:

> If you find the defendant stabbed . . . Fowler not during the course of a robbery [and] without the intent to commit a theft, and did so only in response to unwanted touching or threat not amounting to imminent danger of rape . . . . [P] . . . the crime of second degree murder is reduced to voluntary manslaughter. . . . [P] If you find the defendant stabbed . . . Fowler without the intent to commit robbery or theft, and that he stabbed only in response to imminent rape, having an actual belief that the rape was imminent, [and] if you find such a belief reasonable under the circumstances, the defendant is entitled to an acquittal on the charge of murder.

Lopez, 2006 WL 3004219, at *8.

The trial court correctly instructed the jury as to which facts would have precluded the jury from finding a logical nexus between felony and killing. Thus, the trial court did not fail to provide the jury with the necessary and appropriate instructions for determining the factual issue on which Lopez bases his appeal, namely, whether the killing of the victim was part and parcel of a burglary/robbery or whether it occurred during the course of a burglary/robbery. Accordingly, the trial court's instructions were not erroneous.

III.   Was there a Reasonable Likelihood the Jury Misapplied the Instructions?

Constitutional error in an ambiguous jury instruction only occurs when there is a "reasonable likelihood" that the jury has applied the instruction in a way that violates the Constitution. See

8

Estelle v. McGuire, 502 U.S. 62, 72 & n.4 (1991). Finding a reasonable likelihood establishes that an error has occurred. See Calderon v. Coleman, 525 U.S. 141, 146-47 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting relief in habeas proceedings. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Calderon, 525 U.S. at 146.

Here, the record indicates that Lopez testified at his trial that Olivera had told him that he should rob Fowler. Lopez further admitted that he had the thought of robbing Fowler when he approached Fowler's car and that he decided not to rob Fowler while in Fowler's car because Fowler was bigger than him. On cross-examination Lopez admitted that his thoughts of robbing Fowler prior to arriving at Fowler's house were related to his taking Fowler's wallet "because Olivera said to take some money." Lopez also admitted that he expected to find Olivera outside the house after the robbery, which, in fact, he did.

The jury concluded that Lopez went to Fowler's house intending to rob him. The jury foreperson responded to the trial court's instructions, saying "[w]hat we need to know is if you had a thought in your mind to go and do something and on the way to do that you change your mind, you get to where ever [*sic*] you're going and now the way [] the scenario plays out[,] you actually follow through with what your original thought in your mind was, does that still show the intent, or is there a break because of that if the intent no longer stays there." Lopez, 2006 WL 3004219, at *9-10.

In People v. Dillon, 34 Cal. 3d 441 (1983), the California Supreme Court found that a 17-year-old defendant committed felony murder when he went to a marijuana field intending to rob the landowner of his illegal crop, when he abandoned his robbery plan once at the field, and when he killed the landowner as the landowner attacked him. Under those circumstances, the court held that attempted robbery was sufficient to activate the felony murder rule. Dillon, 34 Cal. 3d at 452.[1] The court reasoned:

> [A]cts will be sufficient when they "clearly indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design . . . " CALJIC No. 6.01 states, "If a person has once committed acts which constitute an attempt to commit crime, he cannot avoid responsibility by not proceeding further with his intent to commit the crime, either by reason of voluntarily abandoning his purpose or because he was prevented or interfered with in completing the crime.". . .

9

> [T]he requisite overt act "need not be the last proximate or ultimate step towards commission of the substantive crime . . .
> We are satisfied that society is entitled to no lesser degree of protection when the charge is felony murder, involving as it does an attempt to commit a felony that by settled judicial definition must be "inherently dangerous to human life". . . As long as the trier of fact is convinced beyond a reasonable doubt that the defendant intended to commit a crime and was in the process of attempting to carry out that intent, no public purpose is served by drawing fine distinctions between those who have managed to satisfy some element of the offense and those who have not.
> Nor is it appropriate to carve out a defense of voluntary abandonment in this context. As the jury was properly instructed, subsequent events tending to show such an abandonment are irrelevant once the requisite intent and act are proved.
> If it is not clear from a suspect's acts what he intends to do, an observer cannot reasonably conclude that a crime will be committed; but when the acts are such that any rational person would believe a crime is about to be consummated absent an intervening force, the attempt is underway, and a last-minute change of heart by the perpetrator should not be permitted to exonerate him.
> And in the case of a prosecution for attempt, an additional rule is applicable. Acts that could conceivably be consistent with innocent behavior may, in the eyes of those with knowledge of the actor's criminal design, be unequivocally and proximately connected to the commission of the crime; it follows that the plainer the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement.

34 Cal.3d at 452-55.

Applying the California Supreme Court's reasoning to this case, the fact that Lopez went to Fowler's house with the admitted intent to rob him is sufficient to establish Lopez's attempted robbery of Fowler. Lopez's presence in Fowler's house facilitated both the robbery of Fowler (which eventually did in fact occur) and the killing of Fowler. There is thus a logical nexus between the underlying felony and the act resulting in death and the felony murder rule was correctly applied, even if the instructions had been ambiguous, which they were not. Accordingly, Lopez is not entitled to relief on this claim.

CONCLUSION

The court concludes that the state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established law. Accordingly, the petition for writ of habeas corpus is DENIED.

IT IS SO ORDERED.

Dated: August 20, 2009

MARILYN HALL PATEL
United States District Court Judge

10

**<u>ENDNOTES</u>**

1. Dillon has been abrogated by statute in regard to second degree felony murder, which is not at issue here. <u>See</u> <u>People v. Chun</u>, 45 Cal.4th 1172, 1186 (2009).